**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION**

| | |
|---|---|
| **LARRY TOLBERT and** ) | |
| **CHRIS TOLBERT,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| v.   ) | **Civil Action No. 1:08-1258** |
| ) | |
| **DON GOODE, ADAM NELSON and** ) | |
| **DRAPER VALLEY GOLF COURSE/** ) | |
| **CLUB, INC.,** ) | |
| ) | |
| **Defendants.** ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is Defendants' Motion for Summary Judgment (Document No. 19.), filed on May 5, 2009. The Court notified Plaintiffs pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiffs had the right to file a response to the Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting their claims as they are challenged by Defendants in moving for summary judgment. (Document No. 21.) Plaintiffs have filed a Response to Defendants' Motion and Affidavits in Support. (Document Nos. 27 and 28.) Having thoroughly examined the record in this case, the undersigned respectfully recommends that the District Court grant the Defendants' Motion for Summary Judgment.

**FACTUAL AND PROCEDURAL HISTORY**

Plaintiffs, acting *pro se*, filed this action on November 3, 2008, alleging violations of 42 U.S.C. §§ 1983 and 1985(3).[1] (Document No. 1.) Specifically, Plaintiffs assert that "Defendants

---

[1] Because Plaintiffs are acting *pro se*, the documents which they have filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

violated the Plaintiffs' right to free speech and right to viewpoint protected by the First Amendment, and denied equal access to a public accommodation by discrimination on the grounds of race, creed, etc." (Id.) As supporting facts, Plaintiffs allege as follows:

> On May 23, 2008, the Plaintiffs paid to play 18 holes of golf at Draper Valley Golf Course. The Defendant, Adam Nelson, pro shop employee, made the transaction. The Plaintiffs engaged in conversation with Defendant Don Goode, club manager, questioning an incident that occurred on the previous round of golf played at Draper Valley by the Plaintiffs on May 7, 2008. Defendant Goode said that the Plaintiffs handled the incident properly, and after the Plaintiffs expressed their view on how the course was operated, how unfairly and rudely the Plaintiffs were treated by Draper Valley Golf Course/Club and their employees, Defendant Goode, in concert with Defendant Nelson, banned the Plaintiffs from Draper Valley Golf Club. Under intimidation and threatening of having the Plaintiffs arrested for trespassing, the Defendant Goode told the Defendant Nelson to issue a refund to the Plaintiffs for the payment made 14 minutes earlier.

(Id., pp. 1 - 2.) Plaintiffs request damages in the amount of "$150,000, plus court costs."

On May 5, 2009, Defendants filed a Motion for Summary Judgment. (Document No. 19.) Defendants first claim that Plaintiffs' Section 1983 claim must be dismissed because "Plaintiffs cannot establish that any of the Defendants were acting under color-of-state law, as required to support a claim under Section 1983, for the conduct at issue." (Id., p. 3.) Defendants argue that "[t]here is no allegation that any of the Defendants acted in concert; at the suggestion; under coercion; at the direction or as participants in acts undertaken by any individuals or entities who may be characterized as state actors." (Id.) Defendants contend that they "were acting in their own right and/or as agents and representatives of the Draper Valley Golf Club/Course, Inc." (Id.) Next, Defendants contend that Plaintiffs Section 1985 claim alleging that Defendants conspired to violation Plaintiffs' First Amendment rights should be dismissed because there was no State involvement. (Id., p. 4.) Specifically, Defendants argue that "Plaintiffs have offered no allegations, nor are Plaintiffs capable of establishing, that the alleged conduct of the within Defendants were

involved or connected with state action." (Id.) Defendants claim that their alleged misconduct was not aimed at influencing State activity. (Id.) Defendants further assert that they were not "employees, agents, or representatives of any federal, state or local governmental entities, nor were said Defendants alleged to have been or acting as such." (Id.) In support of the Motion, Defendants attach the following: (1) Affidavit by Donald Goode (Id., p. 11.); and (2) Affidavit by Adam Nelson (Id., p. 13.).

In his Affidavit, Donald Goode states that "[a]s of May, 2008, and all time thereafter, I was and remained an employee of Draper Valley Golf Club, Inc." (Id., p. 11.) Defendant Goode states that in May, 2008, he held the position of general manager and golf pro for Draper Valley Golf Course/Club [DVGCC]. (Id.) Defendant Goode declares that during the time relevant to any allegation contained in Plaintiffs' Complaint, he was not "an employee and/or agent of any federal, state or local governmental entities" or acting "in concert, at the direction or with the assistance of any federal, state or local governmental entities, organizations, employees, agents and/or representatives." (Id.) Defendant Goode further states that DVGCC "is not operated at the direction and/or by any federal, state or local governmental entities, employees and/or agents thereof." (Id.)

Adam Nelson states in his Affidavit that "as of May, 2008, and all times thereafter," he was employed as assistant pro shop manager for DVGCC. (Id., p. 13.) Defendant Nelson declares that during the times relevant to the allegations contained in Plaintiffs' Complaint, he was not "an employee and/or agent of any federal state or local governmental entities" or acting "in concert, at the direction or with the assistance of any federal, state or local governmental entities, organizations, employees, agents and/or representatives." (Id.) Defendant Nelson further states that DVGCC "is not operated at the direction and/or by any federal, state or local governmental entities, employees

and/or agents thereof."(Id.)

On June 8, 2009, Plaintiffs filed their response to Defendants' Motion for Summary Judgment. (Document No. 27.) Plaintiffs first assert that Defendants are incorrect in their assumption that Plaintiffs' claims are based upon "a disagreement between the Plaintiffs and the named Defendants on how the incident of May 7, 2008, was handled." (Id., p. 1.) Plaintiffs state that their claim is based upon Plaintiffs being "banned after expressing their views on how the course was operated and maintained, and how Draper Valley Golf Course/Club treated the Plaintiffs." (Id.) Next, Plaintiffs contend that there was State action and their Section 1983 claim should not be dismissed. Plaintiffs assert that Defendants acted under the color of State law based on the following: (1) "DVGCC has a license from the Virginia Alcoholic Beverage Control Board and is regulated as such;" (2) "The spraying of chemicals at DVGCC must be in compliance with the Virginia Agriculture Department, Pesticide Services Division;" and (3) "Defendants acted under color of state law by using Virginia Code Article 18.2-119, crime of trespassing, to complete the act of banning the Plaintiffs." (Id., pp. 2 - 3.) Finally, Plaintiffs contend that their Section 1985 claim should not be dismissed. (Id., pp. 3 - 4.) Citing Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971), Plaintiffs first argue that "a conspiracy to violate any person or class of persons of equal privileges and immunities under the laws can be made without state involvement and be considered a private conspiracy." (Id., p. 3.) Plaintiffs next contend that even if State action is required, that Defendants' acts resulted in State action sufficient to support their claim. (Id.) Plaintiffs argue that Defendants conspired to deny Plaintiffs equal access to the golf course based upon Plaintiffs' "viewpoints, who they were, where they were from," and their belief in the "Golfer's Creed." (Document No. 28., p. 4.) In support of their Response, Plaintiffs attach

their Affidavits and Defendants' responses to certain discovery requests. (Document No. 27, pp. 5 - 13.)

In his Affidavit, Plaintiff Larry Tolbert states that he and his son have played golf at DVGCC since 2000 and "most DVGCC employees treated my son and I rudely and disrespectfully." (Id., p. 5.) Plaintiff Larry Tolbert proclaims that "[o]ver the many years of playing golf at DVGCC I have seen the type of golfer playing there changing to more of a 'redneck farmer' type, who knows very little about golf etiquette and DVGCC did very little, if anything, to promote or enforce proper golf etiquette." (Id.) Plaintiff Larry Tolbert states that the following incident occurred on May 7, 2008:

> My son and I were playing golf at DVGCC and a group of four golfers playing behind us hit golf balls into our play on the first and second holes. I confronted the group of golfers and asked them to stop hitting balls into our play. After playing the sixth hole, my son went into the pro shop and told Adam Nelson about the incidents, but then again on the eighteenth hole someone in the same group hit into our play.

(Id.) He further explains that the following incident occurred on May 23, 2008:

> I paid Adam Nelson for our round of golf and during this transaction Nelson was being unusually polite and loud in our interactions. Don Goode walked by and said hello and walked into his office. I waited briefly until he came out of his office and I approached him about the incidents of May 7, 2008. Goode said that Nelson had told him about the incidents and that he (Goode) had talked to the employee who was playing in the group behind us on that day. Goode said that he (Goode) was waiting to hear our side of the story. Goode said that we handled the incidents properly and Goode said that he told the employee involved if it happened again the employee would be gone. I told Goode that I believe that DVGCC was becoming, in respect to the May 7, 2008, incident, more like a 'redneck farmer' course and Goode told me that I did not have to play there. I told Goode that it would be my choice, relating to where I chose to play golf. In respect to future play at DVGCC, I told Goode that I have the right to defend myself and Goode said that I do have this right but he (Goode) would not tolerate any confrontations on his course and then he banned us. I asked Goode to put the reason for the banning on the statement but Goode did not and he said that he did not need a reason to ban us. Goode told my son and I that we could be arrested for trespassing after being banned and told Adam Nelson to refund the fees paid that day. Adam Nelson demanded that I give him my credit card to issue a refund. Under the fear of having us both arrested, I complied. At no time during the banning incident of May 23, 2008, did I do anything physical or state that

5

>would do anything to harm anyone or property, or was I loud or disruptive. My son said very little during the banning incident, he was banned only because he is my son.

(Id.) Plaintiff Larry Tolbert states that he has witnessed other golfers taking golf carts off the paths, golfers hitting balls from restricted areas, and golfers becoming loud, obnoxious and slow in their play due to drinking alcohol. (Id., p. 6.) Finally, Plaintiff Larry Tolbert acknowledges that he contacted Pesticide Services, a division of the Virginia Agriculture Department, to request an investigation, which was performed on November 20, 2006. (Id.)

In his Affidavit, Plaintiff Chris Tolbert states that on May 7, 2008, "I went into the clubhouse and told Defendant Adam Nelson that the group behind my group had hit into us on the first two holes." (Id., p. 7.) He proclaims that Defendant Nelson "told me he would tell Defendant Don Goode and added that they had previous issues with the same group that plays on Wednesdays." (Id.) Plaintiff Chris Tolbert explains the incident on May 23, 2008, as follows:

>[M]y father and I entered the Draper Valley Golf Course clubhouse and paid Defendant Adam Nelson for our 3:50 tee time. As we were about to leave the clubhouse Defendant Don Goode came out of his office. My father then asked him about the incident that occurred on May 7, and Defendant Goode said that he wanted to get our side of the story. After my father told him our side, Defendant Goode told us that the employee and the other players in the groups were in the wrong and that we handled the incident correctly. After my father expressed his opinions about how the course was being run, as well as how unfairly we were treated by Draper Valley employees, Defendant Goode banned him. I then asked Don if I was banned, and he said you too. . . . I then questioned Defendant Nelson, "why am I banned," and his response was, "you said that same thing he did."

(Id.) Plaintiff Chris Tolbert contends that he only stated the following on May 23, 2008: "(1) to say I didn't like the fact that one of his employees said 'I didn't hit it . . .' on the incident that occurred on the 7th of May; (2) in response to hitting balls off of their 'sod box,' to which I said I only hit one ball with a driver; and (3) to mention that I felt that most of their employees, for whatever reason,

6

don't like us." (Id.) Plaintiff Chris Tolbert further states that "I believe it was the year 2006 that I spoke with the Draper Valley Golf Course Superintendent about the chemicals that are sprayed there on a regular basis." (Id., p. 8.)

On August 31, 2009, Plaintiffs filed their Supplemental Response to Defendants' Motion for Summary Judgment. (Document No. 50.) Plaintiffs argue that "Defendants violated the Plaintiffs' right to free speech and right to viewpoint by banning the Plaintiffs for what they said and their opinions of the course and the employees of Draper Valley Golf Course/Club." (Id., pp. 1 - 2.) Plaintiffs next claim that they were discrimination against because of (1) Plaintiffs' race and origin; (2) Plaintiffs' "expressed belief in the 'Golfer's Creed;'" and (3) "where the Plaintiffs are from." (Id., p. 2.) Finally, Plaintiffs contend that Defendants "conspired to interfere with and deprive Plaintiffs of their civil rights." (Id.) In support, Plaintiffs state as follows: "Defendants Goode, Nelson and DVGCC had ample time to develop the conspiracy before the banning of the Plaintiffs. The Defendants knew the date the Plaintiffs would be at Draper and the approximate time. Defendant Nelson stated he gave permission to Defendant Goode to sign his name to the banning statement in a nonverbal manner, as if the banning statement was discussed and planned beforehand." (Id., pp. 2 - 3.)

## THE STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiffs' claims, summary judgment is appropriate.

## DISCUSSION

**1.     Section 1983 Claim:**

Section 1983 provides a "broad remedy for violations of federally protected civil rights." Monell v. Dep't of Social Services, 436 U.S. 658, 685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States.

Under Section 1983, liability attaches only to conduct occurring under color of State law. "[M]erely private conduct, no matter how discriminatory or wrongful," fails to qualify as State action. Mentavlos v. Anderson, 249 F.3d 301, 310 (4th Cir. 2001). The Supreme Court has reasoned that there is no liability for private conduct under Section 1983 to "'preserve an area of individual freedom by limiting the reach of federal law' and 'avoid[ing] imposition upon the State, its agencies

or officials, responsibility for conduct for which they cannot fairly be blamed.'" Edmonson v. Leesville Concrete Co., 500 U.S. 614, 619, 111 S.Ct. 2077, 2082, 114 L.Ed.2d 660 (1991)(quoting Lugar v. Edmondson Oil Co., 457 U.S. 922 936-37, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982). The Fourth Circuit has recognized that "[p]rivate activity will generally not be deemed 'state action' unless the state has so dominated such activity as to convert it to state action: 'Mere approval of or acquiescence in the initiatives of a private party' is insufficient." Wahi v. Charleston Area Medical Center, 562 F.3d 599, 615 (4th Cir. 2009)(quoting DeBauche v. Trani, 191 F.3d 507 (4th Cir. 1999)). Thus, private conduct constitutes State action only if it is "fairly attributable to the State." Lugar, 457 U.S. at 937, 102 S.Ct. 2744; see also Scott v. Hern, 216 F.3d 897, 906 (10th Cir. 2000). This requirement is satisfied if two conditions are met: (1) "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and (2) the private party charged with the deprivation "must be a person who may fairly be said to be a State actor. This may be because he is a State official, because he has acted together with or has obtained significant aid from State officials, or because his conduct is otherwise chargeable to the State." Lugar, 457 U.S. at 937, 102 S.Ct. 2744. State action may also be present if the State has ordered the private conduct or "exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must be in law be deemed to be that of the State." Blum v. Yaretsky, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982). Federal courts, however, have held that the following is insufficient to establish State action: (1) a private party's request for police assistance, and (2) licensing and regulation by a State. "Section 1983 does not impose civil liability on persons who merely stand to benefit from an assertion of authority under color of law, but only on those who

act under color of law." Ginsberg v. Healey Car & Truck Leasing, 189 F.3d 268, 271-72 (2nd Cir. 1999). Federal courts have further held that private parties that are extensively regulated by the State, receive substantial governmental assistance, carry out an important societal function, and act pursuant to State authority, are not engaged in State action. See Rendell-Baker v. Kohn, 457 U.S. 830, 841, 102 S.Ct. 2764, 2771, 73 L.Ed.2d 418 (1982)(A nonprofit, privately operated school's discharge decisions were not acts of the State subject to suit under Section 1983 even though the school that was performing a "public function, received public funds, and was regulated by a State agency"); Blum v. Yaretsky, 457 U.S. 991, 1008, 102 S.Ct. 2777, 2788, 73 L.Ed.2d 534 (1982)(finding that medicaid recipients failed to establish State action where recipients challenged their transfer from nursing homes to lower levels of care without adequate notice or hearing, and the decisions were made by private physicians and nursing home administrators who were not influenced by the State's obligation to adjust benefits in conformity with changes in cost of medically necessary care); Jackson v. Metro. Edison Co., 419 U.S. 345, 350-51, 95 S.Ct. 449, 453-54, 42 L.Ed.2d 477 (1974)(holding that the utility corporation's conduct was not attributable to the State where the customer showed no more than that the privately owned and operated corporation was heavily regulated with a partial monopoly and that the corporation elected to terminate service in a manner that the Commission found permissible under State law); and Moose Lodge v. Irvis, 407 U.S. 163, 176, 92 S.Ct. 1965, 1973, 32 L.Ed.2d 627 (1972)(Although the Moose Lodge was regulated by the State Liquor Board, the Moose Lodge's racially motivated refusal to serve liquor to an individual in the private club on private property did not result in State action.).

Based on the foregoing, the undersigned finds that Plaintiffs' Section 1983 should be dismissed. Plaintiffs allege that Defendants violated their constitutional rights by banning them from

DVGCC, which is a privately owned and operated golf course in Virginia. Plaintiffs assert that Defendants acted under the color of State law based on the following: (1) "DVGCC has a license from the Virginia Alcoholic Beverage Control Board and is regulated as such;" (2) "The spraying of chemicals at DVGCC must be in compliance with the Virginia Agriculture Department, Pesticide Services Division;" and (3) Defendants relied upon "Virginia Code Article 18.2-119, crime of trespassing, to complete the act of banning the Plaintiffs." The fact that DVGCC is regulated by the State and allegedly threatened to have Plaintiffs arrested for trespassing if they did not vacate the property, did not result in State action. See Ginsberg, 189 F.3d at 271-72(finding that the fact that the representative of the truck leasing company did not ask the police officer to cease his role in inducing a customer to pay his bill, after the officer was called to the company showroom to stop a disturbance allegedly caused by the customer, was not enough to make the company representative a State actor absence evidence of "plan, prearrangement, conspiracy, custom, or policy"); Hoai v. Vo, 935 F.2d 308, 313 (D.C.Cir. 1991)(stating that "mere recourse to state or local court procedures does not by itself constitute 'joint activity' with the state" sufficient to transform private action into State action); and Eggleston v. Prince Edward Volunteer Rescue, 569 F.Supp. 1344, 1352 (D.C.Va. 1983)(finding that absent regulations encouraging or requiring challenged action itself, State regulation of other activities of otherwise private defendant does not make the challenged action State action). There is no evidence that (a) Defendants were State actors, (b) Defendants engaged in a "plan, prearrangement or conspiracy" with a State actor, or (c) the State dominated or encouraged Defendants' activity "as to convert it into state action." Furthermore, there is no evidence that Defendants received or requested police assistance to remove Plaintiffs from the premises. Accordingly, the undersigned finds that Defendants' action of banning Plaintiffs from

11

DVGCC did not result in State action, and therefore Defendants' Motion for Summary Judgment should be granted as to Plaintiffs' Section 1983 claim.

**2.	Section 1985(3) Claim:**

Section 1985(3) "prohibits two or more person from conspiring to deprive another of equal protection of the law or of equal privileges and immunities under the laws." <u>Ballinger v. North Carolina Agr. Extension Service</u>, 815 F.2d 1001, 1006-07 (4th Cir. 1987). To state a cause of action Section 1985(3), a plaintiff must prove: "(1) a conspiracy of two or more persons, (2) who are motivated by a specific class based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." <u>Simmons v. Poe</u>, 47 F.3d 1370, 1376 (4th Cir. 1995); <u>also see</u> <u>Griffin v. Breckinridge</u>, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Section 1985(3) "does not apply to all tortious conspiratorial inferences with the rights of others, but rather only to conspiracies motivated by 'some racial or perhaps otherwise class-based invidiously discriminatory animus." <u>Tilton v. Richardson</u>, 6 F.3d 683 (10th Cir. 1993); <u>see also</u> <u>Eggleston</u>, 569 F.Supp. at 1352(stating that "Section 1985(3) protects against conspiracies to deprive persons of equal protection because of some discrete, insular, or immutable characteristic they possess such as race, national origin, or sex"). "The other 'class-based animus' language of this requirement has been narrowly construed and does not, for example, reach conspiracies motivated by an economic or commercial bias." <u>United Brotherhood of Carpenters and Joinder of America v. Scott</u>, 463 U.S. 825, 837, 103 S.Ct. 3360, 3358, 77 L.Ed.2d 1049 (1983). The Supreme Court has recognized that Section 1985 reaches purely private conspiracies. <u>Griffin</u>, 403 U.S. at 102, 91 S.Ct. at 1798. Section 1985, however, does

not reach conspiracies to deprive a person of their First Amendment rights unless defendant's conduct constitutes governmental action. United Brotherhood of Carpenters and Joinder of America, 463 U.S. at 832, 103 S.Ct. at 3358(finding that a conspiracy to violate an individual's First Amendment rights is not made out without proof of State involvement); Bellamy v. Mason's Stores, Inc., 508 F.2d 504, 506-07 (4th Cir. 1974)(finding that Section 1985 does not afford civil remedy for non-racially motivated conspiracies to deprive persons of their First Amendment rights unless defendant's conduct constitutes governmental action); Eggleston, 569 F.Supp. at 1352(stating that no element of State action is necessary to state a claim under the Civil Rights Act for conspiracy against an African American because of his or her race, but claims of conspiracy to deprive an African American of his or her constitutional right of free speech and to petition the government for redress of grievances requires State action).

Based on the foregoing, the undersigned finds that Plaintiffs' Section 1985(3) claim must also be dismissed. Plaintiffs allege a cause of action under Section 1985(3) claiming that Defendants conspired to deprive them of their constitutional rights. Specifically, Plaintiffs contend that Defendants (1) conspired to violate Plaintiffs' rights under the First Amendment, and (2) conspired to deny Plaintiffs of equal access to the golf course based upon Plaintiffs' race, origin, viewpoints, "who they were," "where they were from," and their belief in the "Golfer's Creed." (Document No. 28, pp. 2 - 4.) First, the undersigned finds that Plaintiffs' Section 1985(3) claim that Defendants conspired to violate their First Amendment rights must be dismissed due to the lack of State action. As the Court explained above, State action is not established by the fact that DCGCC is regulated by the State and Defendants' act of threatening to have Plaintiffs arrested for trespassing if they did not vacate the property. Next, the Court will consider Plaintiffs' claim that Defendants banned

Plaintiffs from DVGCC based upon Plaintiffs' race, origin, viewpoints, "who they were," "where they were from," and their belief in the "Golfer's Creed." The Court is not required to look beyond the first two elements required for a colorable claim under Section 1985(3). In order for Defendants to have conspired, Defendants must enter into an agreement to commit an unlawful act. Plaintiffs merely make a conclusory assertion that Defendants conspired against Plaintiffs. Plaintiffs contend that Defendants conspired to ban Plaintiffs because Defendants "had ample time to develop the conspiracy before the banning of the Plaintiffs" and Defendant Nelson gave Defendant Goode "permission to sign his name to the banning statement only by eye contact, as if it was discussed and planned beforehand." (Document No. 50, pp. 2 - 3.) The undersigned finds that this speculative and conclusory allegation is insufficient to support a finding of "an agreement to commit an unlawful act." Next, the undersigned finds that there is no evidence that Defendants' actions were motivated by a specific class-based, invidiously discriminatory animus. The undersigned notes that Plaintiffs are Caucasians from Bluefield, West Virginia,[2] who believe in the "Golfer's Creed." The undersigned finds that Plaintiffs are not a protected "class." <u>Bray v. Alexandria Women's Health Clinic</u>, 506 U.S. 263, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993)(stating that the "term 'class' connotes something more than a group of individuals who share desire to engage in conduct that is disfavored by some"); <u>Korotki v. Goughan</u>, 597 F.Supp. 1365, 1375 (D.C.Md. 1984)(finding that "non-resident motorists do no constitute a cognizable class within the meaning of [Section 1985]"). Furthermore, the record reveals that Plaintiffs were banned from DVGCC because Plaintiffs disobeyed club rules, engaged in disruptive behavior, and threatened to defend themselves on the golf course if another

---

[2] The undersigned notes that there is no evidence, nor do Plaintiffs allege, that other individuals were banned because they were Caucasian or West Virginia residents.

golfer hit a golf ball into their play.[3] (Document No. 27, p. 10, Document No. 50, pp. 15 - 16, and 28.) Therefore, Defendants' Motion for Summary Judgment should be granted because Plaintiffs have failed to show any basis for their Section 1985(3) claim.

### **PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendants' Motion for Summary Judgment (Document No. 19.), **DISMISS** Plaintiffs' Complaint (Document No. 1.) and remove this matter from the Court's docket.

The Plaintiffs are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the Plaintiffs shall have thirteen days from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94

---

[3] Plaintiff Larry Tolbert acknowledged in his Affidavit that he "told Goode that I have the right to defend myself and Goode said that I do have this right but he (Goode) would not tolerate any confrontations on his course and then he banned us." (Document No. 27, p. 5.)

golfer hit a golf ball into their play.[3] (Document No. 27, p. 10, Document No. 50, pp. 15 - 16, and 28.) Therefore, Defendants' Motion for Summary Judgment should be granted because Plaintiffs have failed to show any basis for their Section 1985(3) claim.

### **PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendants' Motion for Summary Judgment (Document No. 19.), **DISMISS** Plaintiffs' Complaint (Document No. 1.) and remove this matter from the Court's docket.

The Plaintiffs are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the Plaintiffs shall have thirteen days from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94

---

[3] Plaintiff Larry Tolbert acknowledged in his Affidavit that he "told Goode that I have the right to defend myself and Goode said that I do have this right but he (Goode) would not tolerate any confrontations on his course and then he banned us." (Document No. 27, p. 5.)

(4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Faber and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiffs, who are acting *pro se*, and counsel of record.

Date: September 17, 2009.

R. Clarke VanDervort
United States Magistrate Judge